

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | | |
|---|---|---|
| MARK KATRELL CAMPBELL, § | | |
| Plaintiff, § | | |
| § | | |
| vs. § | CIVIL ACTION 6:16-3265-MGL-KFM | |
| § | | |
| SOUTH CAROLINA DEPARTMENT OF § | | |
| CORRECTIONS, BRIAN P. STIRLING, § | | |
| CHRIS FLORIAN, and DAVID TATARSKY, § | | |
| Defendants. § | | |

**ORDER REJECTING THE REPORT AND RECOMMENDATION
AND DENYING FLORIAN AND TATARSKY'S
MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Plaintiff Mark Katrell Campbell (Campbell) initially filed this putative class action lawsuit in the Charleston County Court of Common Pleas. He alleged constitutional violations and state law causes of action of false imprisonment and negligence/gross negligence/recklessness.

The defendants who were then named in the complaint removed the case to this Court, after which Campbell amended his complaint to add additional defendants. In Campbell's amended complaint, he brings the following claims: (1) false imprisonment and negligence/gross negligence/recklessness as to the South Carolina Department of Corrections (SCDC), and (2) violations of the Eighth and Fourteenth Amendments against Brian P. Stirling, the Director of the SCDC, Chris Florian (Florian), Deputy General Counsel for the SCDC, and David Tatarsky (Tatarsky), head General Counsel for the SCDC (collectively, Defendants). The Court has federal-

question jurisdiction over Campbell's constitutional claims under 28 U.S.C. § 1331; and it has supplemental jurisdiction over his state claims pursuant to 28 U.S.C. § 1367.

The matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting SCDC and Stirling's motion for summary judgment be granted, Florian and Tatarsky's motion for summary judgment be granted, Campbell's motion for summary judgment on his false imprisonment claim be denied, and Defendant SCDC and Stirling's motion to stay consideration of Campbell's motion to certify be granted. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Magistrate Judge filed the Report on October 1, 2018, Campbell filed his objections on October 25, 2018, and Defendants filed their replies on November 8, 2018.

**II.     FACTUAL HISTORY**

Campbell is a former inmate of the SCDC. He was convicted on a drug charge in state court on December 2, 2011, and sentenced to a twenty-five-year term of imprisonment, suspended to service of seven years and five years of probation.

The drug offense Campbell was convicted of and sentenced for was considered a "no parol offense." As such, he was ineligible for "early release, discharge, or community supervision" until

2

he had "served at least eighty-five percent of the actual term of imprisonment imposed." S.C. Code Ann. § 24-13-150 (the eighty-five percent rule). In addition,

> (1) no-parole offenders are given significantly less credits for good conduct, work, or education than other offenders, (2) no-parole offenders are required to participate in a community supervision program before their sentences are considered completed, and (3) no-parole offenders are required to serve eighty percent of their sentences before they are eligible for work release

*Bolin v. S.C. Dep't of Corr.*, 781 S.E.2d 914, 916 (S.C. Ct. App. 2016) (footnote omitted).

After Campbell's arrest, but before his conviction and sentencing, the South Carolina General Assembly passed the Omnibus Crime Reduction and Sentencing Reform Act of 2010 (the Act). It became effective on June 10, 2010. The Act provided, in pertinent part, "Notwithstanding any other provision of law, a person convicted and sentenced pursuant to this subsection for a first offense or second offense may have the sentence suspended and probation granted, and is eligible for parole, supervised furlough, community supervision, work release, work credits, education credits, and good conduct credits." 2010 Act No. 273, § 38.

Florian was charged with reviewing the Act to determine its applicability to the inmates incarcerated by the SCDC. In a memorandum Florian drafted setting forth his interpretation of the Act, he concluded that, although the Act served to make certain no parole offenses parole eligible, if an inmate was denied parole, the eighty-five-percent rule still applied.

Michael Bolin, an inmate of the SCDC, challenged the SCDC's application of the eighty-five-percent rule for what was, at the time of his sentencing, a no parole drug offense. The Act, however, made Bolin's offense parole eligible.

After Bolin completed the SCDC grievance process without success, he appealed to the Administrative Law Court (ALC). It agreed with Florian's interpretation of the Act that the eighty-five-percent rule still applied to Bolin's sentence. He next appealed the ALC's decision to the South

Carolina Court of Appeals, however, and it reversed the ALC's decision and held the Act made the eighty-five-percent rule inapplicable to Bolin's prison sentence. *Bolin*, 781 S.E.2d at 919.

As a result of the *Bolin* decision, the SCDC released over 200 inmates, including Campbell. His claims here arise out of the fact that, as a result of Florian's misinterpretation of the Act and SCDC's misapplication of it, he and other similarly situated individuals were incarcerated longer than they should have been. As noted above, the Magistrate Judge recommends the Court grant Defendants' motions for summary judgment on all of Campbell's claims. With that background in mind, the Court turns to Campbell's objections to the Report.

### III. DISCUSSION AND ANALYSIS

#### A. *Whether Florian and Tatarsky were deliberately indifferent*

First, Campbell objects to the Magistrate Judge's recommendation "Campbell has failed to show deliberate indifference under the Eighth Amendment because Florian and Tatarsky's conduct is, at most, negligence." Objections 2.

The Eight Amendment forbids cruel and unusual punishment. "Detention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of deliberate indifference to the prisoner's liberty interest[.]" *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

"Deliberate indifference entails something more than mere negligence, but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citation omitted) (internal quotation marks omitted) (alteration omitted). "It requires that a prison official know of and disregard the objectively serious . . . risk of harm." *Id*.

"With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994) (collecting cases) "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id*.

In arguing Florian and Tatarsky were deliberately indifferent, Campbell states "Florian and Tatarsky knew the General Assembly was contemplating a 'significant' bill to alter inmate release dates by making non-parolable offenses parolable; the consequence for treating a parolable offense as non-parolable was significant; hundreds of inmates would be affected by the reform; and their decision would implicate the 'fundamental' right to be free from incarceration." Objections 2 (citation omitted).

He also claims, and Florian and Tatarsky admit, they "were uncertain concerning how to implement [the Act], as evidenced by the Florian Memo, but nevertheless disseminated instructions to SCDC resulting in the incarceration of . . . Campbell and the inmate class beyond their lawful terms of detention." *Id*. (citations omitted).

Campbell further maintains, "Florian conceded the potential risk to inmates and acknowledged uncertainty in the position SCDC took based on his decision." *Id*. at 3. In addition, he faults Tatarsky for allegedly failing "to review Florian's pronouncement prior to issuance and neither man took prophylactic steps to ensure the policy was correct, [although] both men also conceded the obligation to timely release inmates was a clearly recognized one that ensured a guaranteed liberty interest was not infringed." *Id*. (citations omitted) (internal quotation marks omitted) (alteration omitted).

In addition, Campbell complains that, "[a]ccording to . . . Campbell's expert, Robert Daly, SCDC's policy was so obviously wrong that only an incompetent policymaker would have

5

implemented such an illogical policy." *Id*. (citation omitted) (internal quotation marks omitted). Campbell also faults Florian and Tatarsky's failure to seek a declaratory judgment for an interpretation of the Act. *Id*. n.2.

Given the facts of this case, a jury might well find Florian's and Tatarsky's actions and inactions regarding their misinterpretation of the Act amounted to deliberate indifference to a substantial risk of serious harm to Campbell and others similarly situated to him. Put a different way, a jury could reasonably conclude they recklessly disregarded that risk. Therefore, the Court will sustain Campbell's first objection.

### B. *Whether Campbell's Fourteenth Amendment claim can go forward*

In Campbell's second objection, he argues the Magistrate Judge's "recommendation to reject . . . Campbell's substantive due process claim fails to confront the merits of the theory," Objections 5, which, according to Campbell, "is viable here." *Id*.

Campbell contends the Magistrate Judge neglected to adequately consider his Fourteenth Amendment claim. He also claims "there is evidence to support [his substantive due process claim] because the constitutionally shocking' aspect of Florian and Tatarsky's conduct in their knowledge of the risk, uncertainty about the Act, and failure to take any meaningful action, which directly caused the harm." Objections 6. "[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience[.]" *United States v. Salerno*, 481 U.S. 739, 746 (1987).

But, as the Magistrate Judge recognized, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Because the Eighth Amendment "provides an explicit textual source of constitutional protection against a particular sort of government behavior," *id*., the Court employs it, and "not the more generalized

notion of substantive due process," *id*., to guide it in analyzing Campbell's constitutional claims. Consequently, the Court will overrule Campbell's second objection.

### C. *Whether Florian and Tatarsky are entitled to qualified immunity*

Campbell maintains in his third objection the Magistrate Judge erred in concluding "that even if [he] and the class had viable deliberate indifference and substantive due process claims, Florian and Tatarsky are entitled to qualified immunity because those rights were not clearly established at the time of the prolonged detentions at issue here." Objections 6-7.

"Qualified immunity shields . . . state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "The plaintiff bears the burden of proof on the first question—i.e., whether a constitutional violation occurred." *Henry v. Purnell*, 501 F.3d 374, 377–78 (4th Cir. 2007) (citation omitted). And, "[t]he defendant bears the burden of proof on the second question—i.e., entitlement to qualified immunity. *Id*. (citation omitted).

Having determined a jury could reasonably find Campbell has established Florian and Tatarsky violated his constitutional rights, the Court turns to the question of "whether the contours of the right were sufficiently clear that a reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 314 (2015) (citation omitted) (internal quotation marks omitted) (alteration omitted).

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court held in *Malley v. Briggs*, 475 U.S. 335 (1986), that an officer sued in a civil suit will be entitled to immunity if reasonably competent officers could

disagree as to the reasonableness of the defendant officer's response. *Id* at 341. Thus, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

"This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition[.]" *Id* at 201. Thus, "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft*, 563 U.S. at 743 (citation omitted) (internal quotation marks omitted).

Broadly speaking, there is no question it was clearly established when the Act became effective that "[d]etention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of deliberate indifference to the prisoner's liberty interest[.]" *Haygood*, 769 F.2d at 1354. The more specific question here is whether it was clearly established on the effective date of the Act that the Act relieved Campbell and others similarly situated to him from the eighty-five percent rule such that their prison sentences were shortened.

As the Court has already noted, the Act states, in relevant part, "Notwithstanding any other provision of law, a person convicted and sentenced pursuant to this subsection for a first offense or second offense may have the sentence suspended and probation granted, and is eligible for parole,

supervised furlough, community supervision, work release, work credits, education credits, and good conduct credits." 2010 Act No. 273, § 38. After the Court of Appeals' detailed discussion and analysis of the Act, it concluded both the plain meaning and the legislative intent of the Act made clear the effect of the Act was to change Bolin's no-parole offense into a parolable one such that the eighty-five percent rule no longer applied to his sentence.

Turning to the question of whether that law was clearly established on the effective date of the Act, as opposed to when the *Bolin* decision was issued, the Court is mindful of the fact that, although it "must avoid ambushing government officials with liability for good-faith mistakes made at the unsettled peripheries of the law, [it] need not—and should not—assume that government officials are incapable of drawing logical inferences, reasoning by analogy, or exercising common sense." *Williams v. Strickland*, — F.3d ---, No. 18-6219, 2019 WL 1030673, at *4 (4th Cir. Mar. 5, 2019); *see also Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000) (law is clearly established when official "had to know he was violating the Constitution even without caselaw on point."). Florian and Tatarsky's misinterpretation of the Act shows they failed to exercise any of the reasoning techniques set forth in *Williams*.

The *Bolin* court rejected Florian and Tatarsky's misinterpretation of the Act and characterized it as being "unreasonable." *Bolin*, 781 S.E.2d at 918. It also commented that, although "the interpretation of a statute by the agency charged with its administration will be accorded the most respectful consideration, an agency's interpretation affords no basis for the perpetuation of a patently erroneous application of the statute." *Id* at 916 (citation omitted) (internal quotation marks omitted). The Court agrees with the *Bolin* court.

Nevertheless, Florian and Tatarsky attempt to find cover in the ALC's decision agreeing with their misinterpretation of the Act. But, the ALC fails to aid them in the manner they seek. After all,

9

the fact that the ALC concurred with their "unreasonable" misinterpretation and "patently erroneous" application of the statute"does not make it any less "unreasonable" and "patently erroneous."

In sum, it is both axiomatic and elementary that the plain meaning of the Act, coupled with the legislature's intent, leads to the unmistakable conclusion the Act transformed the no parole offenses of Bolin, Campbell and others similarly situated into parolable ones. As such, the eighty-five percent rule was no longer applicable to their sentences. Florian and Tatarsky's interpretation of the Act to the contrary was "unreasonable" and their application of it was "patently erroneous."

As the Court noted above, "qualified immunity balances . . .the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. Inasmuch as Florian and Tatarsky failed to perform their duties reasonably, they are not entitled to qualified immunity on Campbell's Eighth Amendment claim. Accordingly, the Court will deny their motion for summary judgment and sustain Campbell's third objection.

D. **Remaining matters**

By separate order, the Court has adjudicated the other motions referenced above.

IV. **CONCLUSION**

After a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court sustains Campbell's first and third objections, overrules his second one, and rejects the Report. Therefore, it is the judgment of the Court Florian and Tatarsky's motion for summary judgment is **DENIED**.

.   **IT IS SO ORDERED**.

Signed this 21st day of March, 2019, in Columbia, South Carolina.

                                                s/ Mary Geiger Lewis
                                                MARY GEIGER LEWIS
                                                UNITED STATES DISTRICT JUDGE